UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| v. | )  Case No. 2:16-cr-20074-SLD-EIL |
| | ) |
| NICHOLAS INGRAM, | ) |
| | ) |
| Defendant-Petitioner. | ) |

ORDER

Before the Court are Defendant-Petitioner Nicholas Ingram's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255 Motion"), ECF No. 29, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Counseled 2255 Motion"), ECF No. 32, and counseled motion for a status conference, ECF No. 36. For the reasons that follow, the Counseled 2255 Motion is DENIED, and the remaining motions are MOOT.

BACKGROUND

On November 3, 2016, a grand jury indicted Ingram on one count of possession of five grams or more of actual methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Indictment 1, ECF No. 1. Assistant Federal Public Defender Elisabeth Pollock was appointed to represent him. Nov. 15, 2016 Min. Entry. On April 24, 2017, the Government filed an information notifying Ingram and the Court that it intended to rely on Ingram's prior convictions for felony drug offenses to subject him to a ten-year mandatory minimum term of imprisonment. Information Concerning Prior Conviction 1–2, ECF No. 12.

Ingram entered a plea of guilty to the charge against him pursuant to a plea agreement. Apr. 24, 2017 Min. Entry; Plea Agreement, ECF No. 13. Under the plea agreement, Ingram waived his rights to appeal and collaterally attack his conviction and sentence (with an exception for claims of involuntariness and ineffective assistance of counsel). Plea Agreement ¶¶ 26–27. Ingram's plea was accepted by United States District Judge Colin Bruce, who was then presiding over the case, on May 9, 2017. Order Approving Magistrate Judge Recommendation, ECF No. 18.

The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") in advance of sentencing. PSR, ECF No. 20. USPO indicated that Ingram was a career offender, *id.* ¶ 23, and, after accounting for acceptance of responsibility, listed his total offense level as 34, *id.* ¶¶ 24–26. With a criminal history category of VI, *id.* ¶ 47, his Sentencing Guidelines range for imprisonment was 262 to 327 months, *id.* ¶ 80. He was subject to a mandatory eight-year term of supervised release by statute. *Id.* ¶ 82. Ingram did not object to the PSR.[1]

On August 28, 2017, Judge Bruce sentenced Ingram to 204 months of imprisonment and eight years of supervised release. Aug. 28, 2017 Min. Entry. Ingram did not appeal. Judge Bruce recused from the case in early 2020 after Ingram filed a motion for a status update. *See* Jan. 3, 2020 Text Order of Recusal. The matter was reassigned to this Court. *See* Jan. 3, 2020 Text Order Reassigning Case.

In June 2020, Ingram filed the Pro Se 2255 Motion. *See* Pro Se 2255 Mot. 1.[2] He alleged that "counsel failed to preserve [his] rights to raise a claim against Judge Bruce's failure

---

[1] An amended version of the PSR was entered after sentencing, Am. PSR, ECF No. 23, but the changes are irrelevant to resolution of this motion.
[2] The Court uses the page numbers generated by CM/ECF because the Pro Se 2255 Motion is not consistently paginated.

2

to recuse himself from cases pursuant to . . . 28 U.S.C. § 455(a)." *Id*. at 4. The § 455(a) claim would be based on *ex parte* communications between Judge Bruce and the United States Attorney's Office for the Central District of Illinois ("USAO") that came to light in 2018. *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications).

The Court appointed counsel to represent Ingram with respect to the Pro Se 2255 Motion. *See* June 5, 2020 Text Order. On September 30, 2020, counsel filed the Counseled 2255 Motion, mooting the Pro Se 2255 Motion. *See* Counseled 2255 Mot. 1.[3] The Counseled 2255 Motion raises the following claims: that Ingram's "due process rights were violated because Judge Bruce was actually bias[ed] against him"; that "Judge Bruce's conduct created the appearance of bias" requiring recusal under 28 U.S.C. § 455(a); and that the Federal Public Defender's office ("FPD") provided Ingram with ineffective assistance of counsel in violation of the Sixth Amendment by failing to raise claims based on Judge Bruce's communications in Ingram's appeal and by failing to secure tolling agreements to allow Ingram to raise his claims on a motion under § 2255. *Id.* at 12, 22–23.

The Government filed its response on February 1, 2021. Resp., ECF No. 35. It argues that Ingram cannot show that Judge Bruce was actually biased against him, that his "nonconstitutional appearance of bias claim is not a proper basis for relief in a § 2255 proceeding," that his "allegations should be dismissed because he waived his right to collaterally attack his sentence and conviction as part of his plea agreement," that he procedurally defaulted

---

[3] Though the Counseled 2255 Motion states that it "is intended to supplement" the Pro Se 2255 Motion, Counseled 2255 Mot. 1, it asserts a claim substantially similar to the claim raised in the Pro Se 2255 Motion, *see id.* at 22–23 (alleging that the Federal Public Defender's office was ineffective for failing to secure tolling agreements so Ingram could bring his claims pursuant to § 2255), so the Court finds the Pro Se 2255 Motion moot. Even if the claims are not precisely the same, for reasons explained below, any ineffective assistance of counsel claim based on failure to raise claims on postconviction review is meritless as Ingram has no constitutional right to postconviction counsel. *See infra* Section II(C).

3

his § 455(a) claim, that the § 455(a) claim is untimely, and that the ineffective assistance of counsel claims "do not warrant relief." *Id.* at 25–26.

No reply was filed, though Ingram later filed a motion for a status conference.

## DISCUSSION

### I. Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it. 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

### II. Analysis

The Court first addresses the Government's waiver argument as that applies to more than one of Ingram's claims and then addresses each of Ingram's claims and any defenses specific to those claims.

#### A. Waiver

Ingram's plea agreement contains a waiver of the right to collaterally attack his conviction and sentence with limited exceptions. *See* Plea Agreement ¶¶ 26–27. The Government argues that Ingram's due process and § 455(a) claims "are squarely within the scope

4

of the broad collateral attack waiver" and that Ingram "does not assert any recognized exception to the enforcement of the waiver." Resp. 45–46.

"It is well-settled that waivers of direct and collateral review in plea agreements are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013).[4] If a collateral review waiver is voluntary and knowing, it is generally enforceable. *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012). "There are only limited instances when [the court] will not enforce a knowing and voluntary waiver of . . . collateral review." *Id.* Waivers are unenforceable, for example, if "the district court relied on a constitutionally impermissible factor (such as race)" in determining the sentence or "the sentence exceeded the statutory maximum." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (quotation marks omitted). Waivers are also unenforceable "against claims that counsel was ineffective in the negotiation of the plea agreement." *Hurlow*, 726 F.3d at 964. There are also "at least some due process exceptions to a waiver." *United States v. Adkins*, 743 F.3d 176, 192 (7th Cir. 2014). For example, a waiver "will not prevent a defendant from challenging . . . deprivation of some minimum of civilized procedure (such as if the parties stipulated to trial by twelve orangutans)." *Id.* (quotation marks omitted).

As Ingram failed to mention his waiver in either of his motions and did not file a reply, he has not argued that the waiver was not entered into voluntarily and knowingly. In any case, the record demonstrates that it was. Ingram signed the plea agreement, Plea Agreement 16, and represented that the collateral review waiver was entered into voluntarily and knowingly, *see id.* ¶ 28 (acknowledging that he was "waiving [his rights to appeal and collaterally attack his

---

[4] The Seventh Circuit analyzes waivers of the right to appeal and to bring a collateral attack similarly. *See, e.g.*, *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Our reasons for upholding the voluntariness requirement in the context of waivers of direct appeal rights apply with equal force to the right to bring a collateral attack pursuant to § 2255.").

5

sentence] because [he] *personally* believe[d] it [wa]s in his best interest to do so in order to obtain the benefit of the concessions made by the United States in this agreement"); *id.* (stating that he was not "coerced, threatened, intimidated, or in any other way involuntarily persuaded to waive [his] rights to appeal or collaterally attack [his] sentence"); *id.* ¶ 36 (stating that he had "read th[e] entire Plea Agreement carefully and . . . discussed it with fully with [his] attorney" and that he fully understood and accepted the agreement "without reservation, including the paragraphs labeled 'Waiver of Right to Appeal' and 'Waiver of Right to Collateral Attack'").

And, again, as Ingram has not addressed the waiver, he has not identified any other reason for the Court not to enforce it. The Court finds no exception recognized by the Seventh Circuit applies. There is no allegation that the sentence was based on a constitutionally prohibited factor like race or gender or that the sentence exceeds the statutory maximum. *See Adkins*, 743 F.3d at 192. And in the absence of any argument from Ingram that there is a due process exception for a claim that a judge was actually biased against a defendant, *see Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("Due process guarantees an absence of actual bias on the part of a judge . . . ." (quotation marks omitted)), the Court is not inclined to find one exists. Indeed, other courts have enforced waivers against judicial bias claims. *See United States v. Carver*, 349 F. App'x 290, 292–94 (10th Cir. 2009); *Anderson v. United States*, No. CV 12-1025 MCA/WPL & CR 10-0086 MCA, 2013 WL 12164686, at *5–6 (D.N.M. Mar. 7, 2013), adopted by 2015 WL 12859352, at *3–4 (D.N.M. Aug. 17, 2015).

Accordingly, the Court finds that Ingram's statutory § 455(a) claim and his due process bias claim are barred by his collateral review waiver. Nevertheless, as explained below, the Court would deny those claims even if there were no collateral review waiver.

6

B. **Due Process and § 455(a) Claims**

Both the due process and § 455(a) claims are based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, nearly a year after Ingram was sentenced. These communications have been detailed and summarized elsewhere. *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf). Ingram argues that these communications demonstrate that Judge Bruce was actually biased against him, violating his due process rights, and, alternatively, that they demonstrate an appearance of bias that required Judge Bruce to recuse himself under 28 U.S.C. § 455(a). *See* Counseled 2255 Mot. 12.

1. **Due Process**

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)). A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here. In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the

7

defendant's case. It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted). Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062. It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted). Ingram relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically or any evidence showing that the communications impacted his case. *See* Counseled 2255 Mot. 4–15.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). Ingram points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him. Instead, he is relying on the *ex parte* communications alone. *See* Counseled

2255 Mot. 14–15. The Court thus finds that Ingram has failed to show either actual bias or a risk of bias so high that it violates due process. The due process claim is denied.

2. Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Government does not explicitly address whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he should have recused himself from Ingram's case under § 455(a).[5] Instead, it argues that this statutory claim is procedurally defaulted, untimely, and not cognizable on § 2255 review. Resp. 38–44, 46–52. The Court addresses each of these arguments.

a. Procedural Default

"A claim cannot be raised for the first time in a § 2255 motion *if it could have been* raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (emphasis added). The Government argues that Ingram procedurally defaulted his § 455(a) appearance of bias claim by failing to raise it on appeal. Resp. 46–47. Anticipating an argument that "the *ex parte* emails had not been revealed at the time, and therefore [Ingram] could not have raised such a claim in an appeal," the Government argues that "the emails had nothing to do with [Ingram's] case, and [Ingram] cannot excuse his own procedural failure by belatedly asserting misconduct in unrelated cases to bolster a claim he chose not to make." *Id.* at 47. But the Government provides no case law support for its argument that Ingram cannot rely on these communications, which became public after his time to appeal passed, to excuse his default. Instead, it appears to be making an argument that the communications do not support Ingram's

---

[5] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far. *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

9

claim. But that is better considered as an argument on the merits. The Court does not find that Ingram procedurally defaulted this claim.

### b. Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking to vacate his sentence under § 2255 has one year to do so, from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Ingram acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute of limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable tolling of the statute of limitations because Federal Public Defender Thomas Patton made a legal error and failed to preserve his right to raise a claim based on Judge Bruce's failure to recuse from his case. Counseled 2255 Mot. 2–3.[6] The Government responds that Ingram is not entitled

---

[6] The Court cannot ascertain whether Ingram contends his motion is timely under § 2255(f)(2), (3), or (4). He states that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from making a motion," citing to § 2255(f)(2), (3), and (4). Counseled 2255 Mot. 2. But he makes no argument that any of these provisions apply. Instead, he goes on to argue for equitable tolling, *id.* at 2–3, which is a common law doctrine distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (distinguishing between common law equitable tolling and § 2255(f)(2)). In any case, the Court finds that Ingram's motion is not timely under § 2255(f)(2), (3), or (4). Because Ingram does not allege that any government action created an impediment to filing a § 2255 motion, § 2255(f)(2) does not apply. And because Ingram does not rely on a new right recognized by the Supreme Court, § 2255(f)(3) does not apply. The Government argues that even if § 2255(f)(4) applies, the Pro Se 2255 Motion was filed outside the statute of limitations because it was filed more than a year after Ingram could have learned of Judge Bruce's improper communications. Resp. 49. The Court

to equitable tolling because there is "no evidence showing that he exercised diligence in preserving the appearance of bias claim." Resp. 52.

The time limits set forth in § 2255(f) are subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255). A petitioner is entitled to equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotation marks omitted). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Here, Ingram barely develops an argument that he has met both elements of the *Holland* test. He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then merely states that Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse. *See* Counseled 2255 Mot. 2–3 (quotation marks omitted). Ingram does not acknowledge that in *Holland*, the Supreme Court held that "a garden variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at

---

agrees, though it declines to find on the record before it that Ingram should have been aware of the communications in August 2018 when they became public or in October 2018 when a motion for a new trial was filed in a different case, as the Government argues, *see id.* The Government provided a letter from Patton to Ingram dated November 26, 2018 informing him of the communications. *See* Patton Letter, Resp. Ex. B, ECF No. 35-2 at 3–4. At the latest, Ingram should have been aware of the communications in late 2018 when he received this letter. *See also* Status Update Mot. 1 (Ingram representing that he received this letter on November 26, 2018). His Pro Se 2255 Motion was not filed until June 2020, more than a year later.

11

651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite distinguishable from the facts of his case. In *Holland*, the Supreme Court found that the attorney's conduct "may well" have warranted equitable tolling because the facts showed that it went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time despite the petitioner sending "many letters that repeatedly emphasized the importance of his doing so"; he did not research the applicable filing date; he did not inform the petitioner that the Florida Supreme Court had decided his case despite the petitioner's "many pleas for that information"; and the attorney "failed to communicate with his client over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters." *Id.* at 652. The Court remanded for further consideration because "no lower court ha[d] yet considered in detail the facts of th[e] case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief." *Id.* at 653–54. Ingram points to no facts—and cites no further cases—to support his argument that Patton's legal mistake would go beyond mere negligence and support a finding of extraordinary circumstances warranting equitable tolling. *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal advice generally does not by itself trigger equitable tolling."). Moreover, Ingram merely states in a conclusory fashion that he "diligently filed his *pro se* filing upon learning of the mistake." Counseled 2255 Mot. 3. But "mere conclusory allegations of diligence are insufficient." *Mayberry*, 904 F.3d at 531.[7]

---

[7] The record does suggest that Ingram asked Patton to file a § 2255 motion on his behalf in 2018 and that Patton failed to respond to various inquiries from Ingram. *See* Status Update Mot. 1. This is not mentioned in the Counseled 2255 Motion, and it is not the Court's responsibility to find support for and develop Ingram's arguments. *See Sanders v. JGWPT Holdings, Inc.*, No. 14 C 9188, 2016 WL 4009941, at *11 (N.D. Ill. July 26, 2016) ("It is not the Court's responsibility to find arguments, facts, and supporting case law for the parties."). In any case, the status update does not support finding that Ingram diligently sought to assert an appearance of bias claim, specifically.

The Court concludes that Ingram has failed to establish his entitlement to equitable tolling, so it finds his § 455(a) claim untimely.

### c. Cognizability

Even if Ingram's § 455(a) claim were not untimely, it would not warrant relief.  Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  *Davis v. United States*, 417 U.S. 333, 343 (1974).  Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion."  *Davis*, 417 U.S. at 346.  The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[8]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[9]  In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of

---

[8] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[9] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available."  *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

13

a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks omitted). It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." *Id.* It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.* And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap. *Id.* at 82, 83.[10]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality." It made this assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a). *Liljeberg*, 486 U.S. at 858, 863. Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances." *Id.* at 863–64 (quotation marks omitted). The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

---

[10] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear. The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted). The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief. *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255."). It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so." *Id.* at 82. The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

*Id.* at 864. The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under section 2255." *Hardy*, 878 F.2d at 97. It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal." *Id.* The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255 because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted). Here, the alleged error does not rise to that level. As noted above, Ingram has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating

15

circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))). And any violation of § 455(a) would have no bearing on Ingram's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation marks omitted)). Moreover, Ingram was sentenced below his Guidelines range.

  The Court does not find that *Liljeberg* requires a different result. *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances. *See Liljeberg*, 486 U.S. at 858. And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885. The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless. It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard. *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on

16

direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Ingram has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, does not warrant relief under § 2255.

### C.  Ineffective Assistance of Counsel Claims

Ingram asserts that the FPD "provided him ineffective assistance of counsel" in violation of the Sixth Amendment in two ways. *See* Counseled 2255 Mot. 22–24. First, he argues that the FPD "was ineffective for failing to include claims [based on Judge Bruce's *ex parte* communications] in direct appeals once the full scope of the . . . communications was revealed." *Id.* at 23. And second, he argues that the FPD was ineffective for failing to include him in a tolling agreement for actual bias claims and for failing to secure an agreement for appearance of bias claims. *Id.* at 23–24.

With respect to Ingram's first claim, the Government argues that "[i]t is disingenuous to suggest, with the distorting effect of hindsight, that counsel should have appealed and alleged bias" when Ingram "had just received a below guideline sentence, he had waived his right to appeal, and the *ex parte* emails had not surfaced as yet." Resp. 57. The Court finds the last point persuasive. Ingram's right to appeal expired in the fall of 2017, nearly a year before Judge Bruce's *ex parte* communications came to light. His counsel could not have performed deficiently by failing to raise an argument based on facts of which she was unaware.

With respect to the tolling agreement claim, the Government points out that Ingram "has no right to counsel in a post-conviction setting, and nothing was stopping him from filing his

17

own § 2255 motion at any time." *Id.* at 58. It makes many other arguments against this claim, but the Court finds it unnecessary to address them. Ingram had no right to counsel beyond a direct appeal. *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)). Thus, any deficient performance with respect to securing postconviction tolling agreements does not create a Sixth Amendment violation.

### III.   Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Ingram has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, Defendant-Petitioner Nicholas Ingram's counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 32, is DENIED, and his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 29, is MOOT. His motion for a status conference, ECF No. 36, is MOOT in light of this Order. The Clerk is directed to enter judgment and close the accompanying civil case, No. 2:20-cv-02152-SLD.

Entered this 10th day of May, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE